# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRINA BROWN, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-00592-GKF-JFJ |
| | ) | |
| CITY OF BARTLESVILLE, OKLAHOMA, | ) | |
| a municipal corporation, and | ) | |
| COREY BOYD, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Doc. No. 16] of defendant City of Bartlesville. For the reasons set forth herein, the motion is granted in part and denied in part.

## I. Allegations of the First Amended Complaint

The First Amended Complaint ("Amended Complaint")—the operative pleading in this matter—alleges the following facts.[1] On or around October 26, 2016, City of Bartlesville Police Department officers responded to a domestic disturbance reported at Trina Brown's residence. [Doc. No. 4, ¶ 8]. Upon arriving at Brown's residence, the officers learned that William Cole, Brown's boyfriend, had physically battered Brown in the residence but fled the scene prior to the officers' arrival. [*Id.* ¶ 9]. When the officers could not locate Cole, the officers left Brown's residence. [*Id.* ¶ 10]. After the officers departed, Cole returned to Brown's residence. [*Id.* ¶ 11]. A neighbor observed Cole approaching Brown's residence and contacted the Bartlesville Police

---

[1] Brown filed the First Amended Complaint as a matter of course pursuant to FED. R. CIV. P. 15(a) before serving process on the defendants.

Department. [*Id.*]. Bartlesville police officer Corey Boyd and a second officer, Officer Ward, responded, and secured the perimeter of Brown's residence. [*Id.* ¶ 12].

Upon seeing the officers, Brown stepped onto her front porch to make contact with the officers, one of whom had drawn his gun. [*Id.* ¶ 13]. While Brown stood on the porch, Cole burst through the front door and tackled Brown from behind, causing her to tumble forward into her front yard. [*Id.* ¶ 14]. Cole then stood over Brown's body and struck Brown's head and shoulders with his closed fists as she lay on the ground. [*Id.* ¶ 15]. As Cole struck Brown, Ward deployed his Taser on Cole, but the prongs from the Taser lodged in Cole's jacket and caused no effect. [*Id.* ¶ 16]. Boyd then moved forward to attempt to push Cole off of Brown but, as Boyd approached, Cole punched Boyd in the face. [*Id.* ¶ 17]. Boyd then drew and discharged his firearm "in the general direction of Mr. Cole and Ms. Brown." [*Id.* ¶ 18]. Tragically, but perhaps foreseeably, one of the bullets fired by Boyd struck Brown in the head behind her left ear, traveling down her neck and across her back before lodging near her lower spine. [*Id.* ¶ 19].

Brown alleges that the incident is consistent with a pattern of excessive force, rising to the level of a policy or custom, used by Bartlesville police officers in situations police routinely encounter—specifically domestic violence calls. [*Id.* ¶¶ 21-22 and 24]. Bartlesville failed to train, re-train, or otherwise address the use of appropriate force. [*Id.* ¶¶ 23 and 26]. Bartlesville's conduct constitutes a violation of Brown's Fourth Amendment and Fourteenth Amendment constitutional rights to be free from an unreasonable search and seizure and to be free from excessive force. [*Id.* ¶¶ 27-28].

Based on these allegations, the Amended Complaint asserts three (3) causes of action against the City of Bartlesville and Boyd: (1) a claim pursuant to 42 U.S.C. § 1983, the federal civil rights statute, based on violation of Brown's constitutional rights under the Fourth and

Fourteenth Amendments; (2) negligence in violation of the Oklahoma Governmental Tort Claims Act, 51 OKLA. STAT. § 151 *et seq.* ("OGTCA"); and (3) excessive force pursuant to OKLA. CONST. art. 2 § 30 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013). Bartlesville moves to dismiss the entirety of Brown's claims against it. [Doc. No. 16].

## II. Motion to Dismiss Standard

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## III. Analysis

As stated above, Brown asserts three claims against Bartlesville: (1) a section 1983 claim for violation of Brown's Fourth and Fourteenth Amendment rights; (2) an OGTCA negligence claim; and (3) a *Bosh* claim. The court will separately consider each claim.

A.     Section 1983 Claim

"In order to state a claim for municipal liability under § 1983 for the actions of one of its employees, a party must allege sufficient facts to demonstrate that it is plausible (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Asten v. City of Boulder,* 652 F. Supp. 2d 1188, 1207 (D. Colo. 2009). As previously stated, Brown premises her section 1983 claim on two alleged constitutional violations: (1) violation of her Fourth Amendment right to be free from unreasonable searches and seizures, as well as excessive force, and (2) violation of her Fourteenth Amendment right to be free from excessive force. The court will consider each alleged violation separately.

1.     <u>Fourth Amendment</u>

Bartlesville argues Brown fails to allege an unconstitutional seizure as a matter of law and therefore Brown cannot plausibly state a section 1983 claim based on the Fourth Amendment.[2]

In order to state a plausible Fourth Amendment claim for unlawful seizure or excessive force under the Fourth Amendment, plaintiff must allege a "seizure which invokes the protections of the Fourth Amendment." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015); *see also id.* at 575 ("Without a seizure, there can be no violation of the Fourth Amendment . . . . Additionally, without a seizure, there can be no claim for excessive use of force in effectuating that seizure."). It is well-established that an unlawful seizure in "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989).

---

[2] The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Brown does not allege or otherwise contend that she was subject to an unreasonable search.

"A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Id.* (internal citations omitted). Thus,

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement *(the innocent passerby)*, nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Id.* at 596-97 (emphasis altered from original).

Brown urges the court to adopt the "impli[cit]" reasoning of the Third Circuit in *Davenport v. Borough of Homestead*, 870 F.3d 273 (3d Cir. 2017), and conclude that a Fourth Amendment "seizure" can exist when force is deployed and there is not an immediate danger or threat to the public. However, *Davenport* did not so hold. Rather, with regard to the "seizure" requirement, the Third Circuit relied on the Supreme Court's decision in *Brendlin v. California*, 551 U.S. 249 (2007), which held that, "in intentionally stopping a vehicle, an officer subjects not only the driver, but also the vehicle's passengers to a Fourth Amendment seizure." *Davenport*, 870 F.3d at 279 (citing *Brendlin*, 551 U.S. at 254-56). Thus, because Davenport was shot by a police officer to effectuate an end to a vehicular pursuit, a Fourth Amendment "seizure' occurred. *Id.* Here, Boyd did not shoot Brown during the course of a vehicular stop or pursuit, and *Davenport* is not persuasive.[3]

Rather, this court is persuaded that this case is factually analogous to so-called "innocent bystander" cases.

> [T]he Fourth Amendment "reasonableness" standard does not apply to section 1983 claims which seek remuneration for physical injuries *inadvertently inflicted upon*

---

[3] Nor is the court persuaded by Brown's reference to cases involving the release of police canines to effect a seizure because, unlike Boyd, police canines "cannot discriminate between a criminal and an innocent person." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998). Further, Brown does not allege that Bartlesville utilized a police canine.

> *an innocent third party* by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force. Rather, constitutional tort claims asserted by persons collaterally injured by police conduct who were not intended targets of an attempted official "seizure" are adjudged according to substantive due process norms.

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (internal citations omitted) (emphasis added); *see also Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir. 2008); *Childress v. City of Arapaho*, 210 F.3d 1154, 1157 (10th Cir. 2000); *York v. Julian*, No. 97-CV-0651, 2000 WL 33710899, at *4 (D. Utah Aug. 2, 2000) (where plaintiff was not intended target of shots fired, no Fourth Amendment violation). Thus, "[i]t is intervention *directed at a specific individual* that furnishes the basis for a Fourth Amendment claim." *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990) (emphasis added).

Here, Brown does not allege that she was an intended target of Boyd's gunshots. Instead, Brown alleges only that "[s]eeing Ms. Brown lying on the ground, directly within the same field of fire and danger zone as the man who had punched him, Officer Boyd drew his firearm and loosed a fusillade of bullets in the general direction of Mr. Cole and Ms. Brown," and "[f]oreseeably, one of the many bullets Officer Boyd shot in the danger zone struck Ms. Brown . . . ." [Doc. No. 4, ¶¶ 18-19]. Nor does Brown allege that Boyd's conduct was directed toward Brown as a member of a group that the police sought to collectively subdue. *Cf. Nelson v. City of Davis*, 709 F. Supp. 2d 978, 984-87 (E.D. Cal. 2010) (pepperballs dispersed into one thousand plus person party targeted by police presented fact question as to "seizure"). Rather, the allegations of the Amended Complaint characterize Brown as an "innocent bystander[]" and "innocent citizen[]." [Doc. No. 4, ¶¶ 31 and 34]. Thus, even assuming the truth of the allegations of the Amended Complaint, as this court must, the Amended Complaint includes no allegations from which the court may reasonably infer that Boyd intended to target Brown or direct his gunfire toward her.

Thus, no Fourth Amendment "seizure" occurred as a matter of law and Brown cannot plausibly state a claim for violation of the Fourth Amendment right to be free from an unreasonable seizure or excessive force. *Jones*, 809 F.3d at 575.

### 2. Fourteenth Amendment

Brown also alleges that Boyd violated her Fourteenth Amendment substantive due process right to be free from excessive force.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotations omitted). "The 'ultimate standard' for assessing an alleged violation of substantive due process is 'whether the challenged government action shocks the conscience of federal judges.'" *Ward v. Anderson*, 494 F.3d 929, 937 (10th Cir. 2007) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)).

> It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

*Id.* at 937-38 (quoting *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222-23 (10th Cir. 2006)). In *County of Sacramento v. Lewis*, the United States Supreme Court provided some clarification as to the "shock the conscience" standard. 523 U.S. 833 (1998). There, the court clarified that, although behavior at the lower end of the common-law fault spectrum like negligence does not give rise to a constitutional claim, it is "behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. Additionally, in *Lewis*, the Court indicated that "middle

range" conduct—specifically "deliberate indifference"—may suffice for substantive due process liability, stating "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850. The Tenth Circuit has stated "this middle level of culpability encompasses conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff." *Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009). The deliberate indifference standard applies "'only when actual deliberation is practical.'" *Childress*, 210 F.3d at 1157 (quoting *Lewis*, 523 U.S. at 851); *see also Green,* 574 F.3d at 1303. Whether conduct shocks the conscience is a question of law for the court to determine. *Perez v. Unified Gov't of Wyandotte Cnty.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005).

The Amended Complaint includes no allegations of intentional conduct. Rather, the Amended Complaint asserts that Boyd acted recklessly and unreasonably. [Doc. No. 4, ¶¶ 20, 28, and 32]. Specifically, as previously stated, the Amended Complaint includes allegations that while Brown was standing on her front porch, Cole tackled Brown from behind; Cole then began striking Brown's head and shoulders with his fists; Ward deployed a Taser on Cole to no effect; and Boyd then moved forward to attempt to push Cole off of Brown and, as Boyd approached, Cole punched Boyd in the face. [Doc. No. 4, ¶¶ 14-17]. At that point, Brown alleges "*[s]eeing Ms. Brown lying on the ground*, directly within the same field of fire and danger zone as the man who punched him, *Officer Boyd drew his firearm* and loosed a fusillade of bullets in the general direction of Mr. Cole and Ms. Brown." [*Id.* ¶ 18 (emphasis added)]. Taking these allegations as true, as the court must as this stage, the court may reasonably infer that, because he had sufficient time to observe Brown

on the ground and draw his firearm, actual deliberation by Boyd was practical prior to utilizing lethal force. Thus, the deliberate indifference standard may apply.

When the deliberate indifference standard is implicated, "to survive a challenge at the Rule 12(b)(6) pleading phase, a plaintiff must have pleaded sufficient facts in his complaint from which a court may draw a plausible inference that a defendant acted with conscience-shocking deliberate indifference." *Doe v. Heil*, 533 F. App'x 831, 845 (10th Cir. 2013).[4] "[D]eliberate indifference in the Fourteenth Amendment due process context is, itself, a stringent standard." *Id.* at 844. However, as another court in this district has recognized with regard to whether conduct shocks the conscience, "[a]lthough it is a question of law, the question often turns on a close examination of evidence, including: (1) the contextual facts; (2) the particular environment in which the state action occurs; and (3) whether the state actor had time to deliberate or was acting under exigent circumstances." *Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty.*, 984 F. Supp. 2d 1144, 1151-52 (N.D. Okla. 2013) (internal citations omitted).

Here, Brown alleges that Boyd acted with deliberate indifference by firing "a fusillade of bullets," despite his knowledge that Brown was in the same field of fire or "danger zone." [Doc. No. 4, ¶ 18]. The court concludes that whether Boyd had time to deliberate such that the deliberate indifference standard applies and whether Boyd's actions shock the conscience require a meaningful review of the factual record. *See Kerns*, 984 F. Supp. 2d at 1152. At this point, Brown's allegations that Boyd fired a shower of bullets with knowledge that Brown was in the "danger zone" permit the court to draw a plausible inference that Boyd acted with conscience-

---

[4] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1.

shocking indifference. Therefore, the Amended Complaint sufficiently pleads a violation of Brown's substantive due process rights under the Fourteenth Amendment.[5]

Even if the Amended Complaint sufficiently alleges a constitutional violation, Bartlesville argues that Brown does not state a plausible section 1983 claim for municipal liability because the Amended Complaint does not identify a constitutionally deficient policy, procedure, or custom. *See Asten,* 652 F. Supp. 2d at 1207 (to state a plausible section 1983 claim, party must allege sufficient facts to demonstrate "that a municipal policy or custom was the moving force behind the constitutional deprivation"). The Tenth Circuit has stated that a municipal policy or custom may take the form of

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; and (5) "the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (alterations in original) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

The Amended Complaint includes no allegations of a formal regulation or policy statement. However, municipal liability may also "be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the

---

[5] Like other courts in this district, however, the court observes "that federal law imposes an extremely high standard, and that the record evidence must be particularly egregious in order to shock the conscience of this Court." *See Kerns*, 984 F. Supp. 2d at 1152.

force of law.'" *Brammer-Hoelter*, 602 F.3d at 1189 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Although it does not appear that the Tenth Circuit has directly addressed the issue, district courts in this Circuit have held "[t]he plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015); *see also Granato v. City & Cnty. of Denver*, No. 11-CV-00304-MSK-BNB, 2011 WL 3820730 (D. Colo. Aug. 30, 2011); *Atwell v. Gabow*, No. 06-CV-02262-JLK, 2008 WL 906105 (D. Colo. Mar. 31, 2008); *Brashear v. Tulsa Cnty. Bd. of Cnty. Comm'rs*, No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *3 (N.D. Okla. Feb. 17, 2016). Allegations of an informal or unwritten policy, procedure, or custom should be treated as "'legal conclusions' at the pleading stage—which must be supported by facts, rather than conclusorily alleged—and not 'facts' in and of themselves, to be taken as true at face value[.]" *Id.* (citing *Martinez v. Winner*, 771 F.2d 424, 443-44 (10th Cir. 1985); *Atwell v. Gabow*, No. 06-CV-02262-JLK, 2008 WL 906105 (D. Colo. Mar. 31, 2008); *Granato v. City & Cnty. of Denver*, No. 11-CIV-00304-MSK-BNB, 2011 WL 3820730 (D. Colo. Aug. 30, 2011); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154 (D.N.M. 2014)).

With regard to informal policies or practices, the Amended Complaint alleges "[u]pon information and belief, Defendant City of Bartlesville's business records—specifically the 'use of force' forms—show a pattern of excessive force in situations police routinely encounter to an extent that an indifferent policy or custom has been adopted by implication or ratification." [Doc. No. 4, ¶ 21]. Although Brown alleges "upon information and belief" Bartlesville's records will demonstrate a pattern of excessive force, the Amended Complaint includes no specific facts to

support such a pattern.[6] Rather, the Amended Complaint includes factual allegations related only to the incident involving Brown. "Ordinarily, however, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." *Lopez v. City of Tulsa*, No. 09-CV-757-TCK-FHM, 2010 WL 3825395, at *5 (N.D. Okla. Sept. 27, 2010) (alterations in original) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). Further, the Amended Complaint includes no allegations that plausibly suggest the nature of the asserted informal policy. *Griego*, 100 F. Supp. 3d at 1216. Thus, the Amended Complaint merely recites that an informal policy or custom existed and therefore is too conclusory to state a plausible section 1983 claim.

The Amended Complaint includes no allegations of a decision by a final policymaker, but does include references to "ratification." [Doc. No. 4, ¶¶ 21 and 24]. *See Moss v. Kopp,* 559 F.3d 1155, 1169 (10th Cir. 2009) ("[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality."). However, Brown does not identify a final policymaker that ratified Boyd's conduct, nor does she identify when or how the ratification occurred. As this court has previously held "merely alleging that some [city] policymaker approved the [officer's] conduct in some way and at some time is too conclusory to state a plausible *Monell* claim." *Brashear*, 2016 WL 633374, at *3.

---

[6] The Amended Complaint includes allegations of another incident with "facts similar in all constitutional aspects as this case" that occurred on October 26, 2016. *See* [Doc. No. 4, ¶ 22]. In its motion, Bartlesville asserts that the incident described is, in fact, the subject incident of this lawsuit, and, in her response, Brown does not dispute the identity of the incidents. Accordingly, because Brown effectively concedes that the incident is, in fact, the incident that is the subject of this lawsuit, the allegations included in paragraph 22 of the Amended Complaint are not well-pleaded, and this court need not treat them as true for purposes of the motion to dismiss. *See generally Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1368 (D.N.M. 2012).

Finally, the Amended Complaint includes allegations that Bartlesville failed to adequately train. *See* [Doc. No. 4, ¶¶ 23-26 and 33-34]. Specifically, the Amended Complaint includes the following allegations:

> 23. Upon information and belief, despite this realization of the routine nature of these calls, and the need for appropriate force for these calls at least by October 2016, The City of Bartlesville did not train, re-train, or otherwise address the use of appropriate force with his subordinates—including Officer Boyd.
>
> 24. This blind indifference by the City of Bartlesville to predictable domestic violence calls requiring use of force training rises to the level of the adoption or ratification of a policy or custom within the police department.
>
> 25. The City of Bartlesville acted with deliberate indifference which was a proximate cause of the injuries inflicted upon Ms. Brown through one or more of the following: inadequate policies, inadequate training, or inadequate supervision.
>
> 26. Upon information and belief, the City of Bartlesville failed to train Officer Boyd on the proper use of deadly weapons when innocent persons are in the danger zone, and progressive force such as physical battery or redeployment of Tasers before discharging a spray of bullets. These failures were deliberately indifferent to Ms. Brown's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Although not robustly pled, Brown identifies the specific deficiencies in Bartlesville's training—proper use of deadly weapons when innocent persons are in the danger zone and the use of progressive force. Further, although Brown does not identify a pattern of similar constitutional violations, the Amended Complaint includes sufficient allegations from which the court may infer that domestic violence situations constitute a recurring situation with the potential for constitutional violation. *See Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) (Supreme Court has not foreclosed the possibility that, in rare circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations"). The Amended Complaint characterizes an officers'

response to domestic violence calls as "routine" and "predictable." [Doc. No. 4, ¶¶ 23-24]. Finally, the Amended Complaint asserts that the failure to train proximately caused Brown's injuries. [*Id.* ¶¶ 27 and 33]. Thus, the court concludes that the Amended Complaint adequately states a claim for section 1983 municipal liability for failure to train. *See Fernandes v. City of Broken Arrow*, No. 16-CV-0630-CVE-FHM, 2017 WL 471561, at *10 (N.D. Okla. Feb. 3, 2017).

Based on the foregoing, Brown's section 1983 claim against Bartlesville is dismissed without prejudice except to the extent premised on Fourteenth Amendment substantive due process violations through failure to train.[7]

### B. OGTCA Negligence Claim

Bartlesville argues that it is exempt from liability for Brown's OGTCA negligence claim pursuant to 51 OKLA. STAT. § 155(6). In response, Brown argues § 155(6) is inapplicable and the OGTCA does not provide blanket immunity for police officers.

Through the OGTCA, Oklahoma adopted the doctrine of sovereign immunity, and waived that immunity only to the extent provided in the Act. 51 OKLA. STAT. § 152.1. Pursuant to the Act,

> [t]he state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in the [OGTCA] and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state.

---

[7] The Amended Complaint includes a single reference to deliberate indifference in hiring Boyd. [Doc. No. 4, ¶ 33]. However, the Amended Complaint includes no factual allegations related to Boyd's hiring or that his hiring was the moving force behind Brown's injuries and therefore the Amended Complaint does not state a claim based on Bartlesville's hiring practices.

*Id.* § 153(A).[8]  However, "[t]he state or a political subdivision shall not be liable if a loss or claim results from: . . . the method of providing[] police, law enforcement or fire protection." *Id.* § 155(6).  Interpreting section 155(6), the Oklahoma Supreme Court explained:

> "Protection" serves as the key word for the textual analysis of the critical sentence quoted here from subsection 6.  The exemption in that subsection is invocable when the tort arises while a municipality is rendering services that fall into some category of *police protection, law enforcement protection or fire protection*.  In short, a governmental subdivision is not *liable for deficiency of protective services extended by its police, law enforcement or fire fighting components*.
>
> ***
>
> Statutory immunity for *providing protective services (police or fire)* is not co-extensive with a blanket immunity from common-law negligence for *carrying out law enforcement duties*.  The GTCA's purview of immunity does not encompass the latter category.  A scenario in which *a law enforcement function* is negligently carried out—as in actions incident to arrest or imprisonment—must be distinguished *from negligently providing protective service*.  The former activity is unshielded by the § 155(6) immunity.

*Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1066 (Okla. 1999) (internal footnotes omitted) (emphasis in original).  "In interpreting § 155(6), the Oklahoma Supreme Court has focused on the 'relationship' of the municipality to the plaintiff as a result of the function being provided, rather than the particular action resulting in injury."  *Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 94 (10th Cir. 2008); *see also Schmidt v. Grady Cnty.*, 943 P.2d 595, 598 (Okla. 1997).

The Amended Complaint alleges that Bartlesville police first responded to a report of a domestic disturbance at Brown's residence, and learned that Cole had physically battered Brown and then fled.  [Doc. No. 4, ¶¶ 8-9].  Officers left Brown's residence when they were unable to locate Cole.  [*Id.* ¶ 10].  However, Boyd and Ward returned when a neighbor reported Cole walking

---

[8] The OGTCA defines "political subdivision" to include "a municipality," such as the City of Bartlesville.  51 OKLA. STAT. § 152(11).

toward Brown's residence. [*Id.* ¶¶ 11-12]. When Brown made contact with the officers, Cole tackled Brown and proceeded to strike her. [*Id.* ¶¶ 14-15]. After Ward unsuccessfully deployed his Taser, Cole moved forward to attempt to push Cole off Brown, at which point Cole punched Boyd in the face and Boyd then fired his service weapon. [*Id.* ¶¶ 16-18].

Based on these allegations, the court can reasonably infer only that Boyd and Bartlesville's relationship to Brown as a result of the function being provided, rather than the particular action resulting in injury, was protective in nature. *See Snider,* 313 F. App'x at 94. There are no allegations that Bartlesville police officers intended to arrest or imprison Brown. *Cf. Salazar,* 976 P.2d at 1066. Rather, the court may infer only that Brown was the subject of a telephone call to provide protection as a result of an apparent domestic disturbance. Thus, the court concludes that "[Boyd], responding to the dispatch call, 'stood vis-à-vis [Brown] as a protector, not as a 'law enforcer.'" *Bridges v. Wilson,* No. 15-CV-126-GKF-PJC, 2016 WL 10537014, at *4 (N.D. Okla. Dec. 8, 2016); *see also Samuel v. City of Broken Arrow*, 506 F. App'x 751, 756 (10th Cir. 2012).[9]

Additionally, Brown argues that § 155(6) is inapplicable because the OGTCA provides immunity solely for negligent acts or omissions, not recklessness. The court is not persuaded. A plain reading of the OGTCA does not suggest any distinction between negligent and reckless conduct. Rather, a political subdivision "shall be liable for loss resulting from its torts or the torts of its employees *acting within the scope of their employment*"—subject to the exemption for police

---

[9] The cases relied on by Brown for the proposition that the OGTCA does not provide blanket immunity are inapposite, as the courts did not consider § 155(6) and its exemption for "protection." *See Tuffy's Inc. v. City of Oklahoma City*, 212 P.3d 1158 (Okla. 2009) (considering application of § 155(4), providing exemption for claims arising from the *enforcement* of a law); *Decorte v. Robinson*, 969 P.2d 358 (Okla. 1998) (considering scope of employment); *Nail v. City of Henryetta*, 911 P.2d 914 (Okla. 1996) (same).

or law enforcement protection—without any reference to intent. *Id.* §§ 153(A), 155(6).[10] "When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." *Brown v. Eppler*, 725 F.3d 1221, 1230 (10th Cir. 2013) (quoting *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002)). Furthermore, even if the language of the statute supported Brown's interpretation, Brown does not assert recklessness in the OGTCA claim. Rather, her OGTCA claim is limited to allegations that Boyd acted negligently. *See* [Doc. No. 4, ¶¶ 35-43].

The allegations of the Amended Complaint permit only one reasonable inference: that defendants' relationship to Brown as a result of the function being provided, rather than the particular action resulting in injury, was protective in nature. Thus, the exemption in § 155(6) for law enforcement protection applies, and Brown's OGTCA claim is properly dismissed.

C. *Bosh* Claim

Finally, the Amended Complaint asserts a claim for excessive force under article 2, section 30 of the Oklahoma Constitution and the Oklahoma Supreme Court's decision in *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013). In *Bosh*, the Oklahoma Supreme Court recognized a private cause of action for excessive force in violation of article 2, section 30 of the Oklahoma Constitution, which protects against "unreasonable searches or seizures." *Bosh*, 305 P.3d at 1001. The Fourth Amendment to the United States Constitution and article 2, section 30 of the Oklahoma Constitution "are identical in substance." *Wright v. Stanley*, No. CIV-11-1235-C, 2015 WL 852402, at *3 (W.D. Okla. Feb. 26, 2015). Thus, the same analysis applies and, to

---

[10] Bartlesville does not dispute that Boyd was acting within the scope of his employment, [Doc. No. 14, p. 3], and, as previously stated, the court can only infer that Boyd was serving a protective function at the time of Brown's injury.

state a claim, "a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Id.* (quoting *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994)).

As discussed above, even assuming the truth of the allegations of the Amended Complaint, the Amended Complaint includes no allegations from which the court may reasonably infer that a "seizure" occurred as a matter of law. Thus, Brown cannot plausibly state a *Bosh* claim.

## IV. Leave to Amend

In opposition to the motion to dismiss, Brown requests, alternatively, that the court give her permission to amend. Local Civil Rule 7.2(*l*) provides that all motions to amend "shall be accompanied by a proposed order submitted pursuant to the Administrative Guide which specifically sets forth what is being amended." Brown's request does not comply with LCvR 7.2(*l*), and is therefore denied.

## V. Conclusion

WHEREFORE, Defendant City of Bartlesville's Motion to Dismiss [Doc. No. 16] is granted in part and denied in part. The motion is granted as to the 42 U.S.C. § 1983 claim to the extent predicated on a Fourth Amendment violation, the Oklahoma Governmental Tort Claims Act claim, and as to the excessive force pursuant to OKLA. CONST. art. 2 § 30 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013) claim. The motion is otherwise denied. Brown may file a motion for leave to amend that complies with LCvR 7.2(*l*) no later than Tuesday, August 7, 2018.

DATED this 30th day of July, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE